```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                   FORT LAUDERDALE DIVISION
                  CASE NO. 0:12-cr-60298-BB-1
 3

 4   UNITED STATES OF AMERICA,

 5           Plaintiff,                    March 12, 2015
                                           11:00 a.m.
 6           vs.

 7   RAEES ALAM QAZI,

 8           Defendant.                    Pages 1 THROUGH 33

 9   _____

10

11              TRANSCRIPT OF PLEA COLLOQUY
             BEFORE THE HONORABLE BETH BLOOM
12              UNITED STATES DISTRICT JUDGE

13

14   Appearances:

15   FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
                         KAREN E. GILBERT, AUSA
16                       ADAM S. FELS, AUSA
                         99 Northeast 4th Street
17                       Miami, Florida 33132

18

19   FOR THE DEFENDANT:  FEDERAL PUBLIC DEFENDER'S OFFICE
                         DANIEL ECARIUS, AFPD
                         150 West Flagler Street
20                       Miami, Florida 33130-1556

21

22   COURT REPORTER:     Yvette Hernandez
                         U.S. District Court
                         299 East Broward Boulevard, Room 207-B
23                       Fort Lauderdale, Florida 33301
                         yvette_hernandez@flsd.uscourts.gov

24

25
```

```
 1         (Call to order of the Court, 11:00 a.m.)

 2             COURTROOM DEPUTY:  Calling Case Number 12-60298,

 3    Criminal, United States of America v. Raees Alam Qazi.

 4             Counsel, please state your appearances for the record.

 5             MS. GILBERT:  Karen Gilbert and Adam Fels on behalf of

 6    the United States, with Jennifer Levy, from the Department of

 7    Justice, and Special Agent Paul Carpinteri from the Federal

 8    Bureau of Investigation.

 9             MR. BARZEE:  Good morning.

10             MR. ECARIUS:  Good morning, Your Honor.  Daniel

11    Ecarius, from the Federal Public Defender's Office, on behalf

12    of Raees Alam Qazi.

13             THE COURT:  Good morning to each of you.

14             And Mr. Qazi, do you fully speak English?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Mr. Qazi, I'm going to ask that you stand,

17    raise your right hand to be placed under oath.

18       RAEES ALAM QAZI, DEFENDANT, SWORN

19             THE COURT:  Please state your full name.

20             THE DEFENDANT:  Raees Qazi.

21             THE COURT:  Sir, is that your full name?

22             THE DEFENDANT:  Raees Alam Qazi.

23             THE COURT:  And Mr. Qazi, you understand that you are

24    now under oath, and if you answer any of my questions falsely

25    your answers may later be used against you in a prosecution or
```

1   perjury or making a false statement.  Do you understand that,

2   sir?

3            THE DEFENDANT:  Yes.

4            THE COURT:  How far did you go in school, sir?

5            THE DEFENDANT:  High school.

6            THE COURT:  Are you fully able to read and write in

7   English?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Sir, have you been treated recently for

10  any mental illness or addiction to narcotic drugs of any kind?

11           THE DEFENDANT:  No.

12           THE COURT:  Right now, sir, are you under the

13  influence of any drugs, medication, or alcoholic beverages of

14  any kind?

15           THE DEFENDANT:  No.

16           THE COURT:  Sir, have you received a copy of the

17  Superseding Indictment in this case?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And have you reviewed the Superseding

20  Indictment, as well as discuss the case in general with your

21  attorney, Mr. Ecarius?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And are you fully satisfied with the

24  counsel, representation, and advice given to you in this case

25  by your attorney, Daniel Ecarius?

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  Mr. Qazi, before the Court is a five-page

 3      Plea Agreement that bears your signature.  Did you fully read

 4      this Plea Agreement?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  Did you understand it?

 7                THE DEFENDANT:  Yes.

 8                THE COURT:  And did you discuss it with your attorney,

 9      Mr. Ecarius?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Were all your questions answered before

12      you signed it?

13                THE DEFENDANT:  Yes.

14                THE COURT:  And is this your signature on the fifth

15      page of the agreement?

16                THE DEFENDANT:  Yes.

17                THE COURT:  As well as your attorney, Mr. Ecarius?

18                MR. ECARIUS:  Yes, Your Honor.

19                THE COURT:  As well as Ms. Gilbert?

20                MS. GILBERT:  Yes, Your Honor.

21                THE COURT:  And Mr. Fels.

22                MR. FELS:  Yes, Your Honor.

23                THE COURT:  Mr. Qazi, has anyone made any promises or

24      assurances to you that are not contained in the Plea Agreement

25      in order to persuade you to accept it?
```

1          THE DEFENDANT:  No.

2          THE COURT:  Has anyone threatened you in any way to

3   persuade you to accept the agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Pursuant to the Plea Agreement, you agree

6   to plead guilty to Counts 2, 5, and 6 of the Superseding

7   Indictment.

8          THE DEFENDANT:  Yes.

9          THE COURT:  Which charged you with conspiring to

10  provide material support to terrorists, in violation of Title

11  18, United States Code, Section 2339A, Subsection A; with

12  attempting to provide material support to a foreign terrorist

13  organization, in violation of Title 18, United States Code,

14  Section 2339B; and with conspiring to forcibly assault a

15  federal employee, in violation of Title 18, United States Code

16  Section 371.

17          Is that true?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Count 2 states the following:

20          Beginning on a date unknown to the Grand Jury, but no

21  later than July 2011, and continuing through on or about

22  November 29th, 2012, in Broward County, in the Southern

23  District of Florida and elsewhere, the Defendants, Raees Alam

24  Qazi, also known as Shan, and Sheheryar Alam Qazi, did

25  knowingly combine, conspire, confederate, and agree with each

```
1    other, and with others known and unknown to the Grand Jury, to

2    provide material support and resources, as defined in Title 18,

3    United States Code, Section 2339A, Subsection B, Subsection 1,

4    including, but not limited to, property, service, including

5    financial services, lodging, communications, equipment, and

6    personnel, knowing and intending that they be used in

7    preparation for and in carrying out a violation of Title 18,

8    United States Code, 2332a, Subsection A, that is, using a

9    weapon of mass destruction.  All in violation of Title 18

10   United States Code, Section 2339A, Subsection A.

11            How do you plead to that charge, sir?

12            THE DEFENDANT:  Guilty.

13            THE COURT:  Has anyone forced you or threatened you to

14   enter your plea of guilty?

15            THE DEFENDANT:  No.

16            THE COURT:  Has anyone made any promises or assurances

17   to you, other than what's contained in the Plea Agreement, in

18   order to get you to plead guilty?

19            THE DEFENDANT:  No.

20            THE COURT:  Are you entering your plea of guilty on

21   your own free will?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Are you entering a plea of guilty because

24   you are in fact, guilty of that offense?

25            THE DEFENDANT:  Yes.
```

```
1              THE COURT:  Count 5 reads the following:

2              Beginning on a date unknown to the Grand Jury, but no

3    later than July 2011, and continuing through on or about

4    November 29th, 2012, in Broward County, in the Southern

5    District of Florida and elsewhere, the Defendants, Raees Alam

6    Qazi, also known as Shan, and Sheheryar Alam Qazi, did

7    knowingly attempt to provide material support and resources, as

8    that term is defined in Title 18, United States Code, Section

9    2339A, Subsection B, Subsection 1, including, but not limited

10   to, property, service, including financial services, lodging

11   communications, equipment, and personnel to a foreign terrorist

12   organization, that is Al-Qa'ida and Al-Qa'ida in the Arabian

13   Peninsula, knowing that those organizations have engaged and

14   engage in terrorist activity, as defined in Title 8, United

15   States Code, Section 1182, Subsection A, Subsection 3,

16   Subsection B.  All in violation of Title 18, United States

17   Code, Sections 2339B, Subsection A, Subsection 1 and 2.

18              How do you plead to that charge, sir?

19              THE DEFENDANT:  Guilty.

20              THE COURT:  Has anyone forced you or threatened you to

21   enter your plea of guilty?

22              THE DEFENDANT:  No.

23              THE COURT:  Has anyone made any promises or assurances

24   to you, other than what's contained in the Plea Agreement, in

25   order to persuade you to enter your plea of guilty?
```

```
 1            THE DEFENDANT:  No.

 2            THE COURT:  Are you entering a plea of guilty on your

 3    own free will?

 4            THE DEFENDANT:  Yes.

 5            THE COURT:  Are you entering a plea of guilty because

 6    you are, in fact, guilty of that offense?

 7            THE DEFENDANT:  Yes.

 8            THE COURT:  Count 6 states the following:

 9            Beginning on a date unknown to the Grand Jury, and

10    continuing through on or about April 8th, 2014, in Miami-Dade

11    County, in the Southern District of Florida, the Defendants,

12    Raees Alam Qazi, also known as Shan, and Sheheryar Alam Qazi,

13    did knowingly and willfully combine, conspire, confederate, and

14    agree with each other to commit an offense against the United

15    States, that is, to forcibly assault, resist, oppose, impede,

16    intimidate, and interfere with and inflict bodily injury upon

17    Sebastian Barrois and Michael Norwood, officers and employees

18    of United States Marshals Service, an agency in a branch of the

19    United States Government, while they were engaged in and on

20    account of the performance of their official duties, in

21    violation of Title 18, United States Code, Sections 111,

22    Subsection A, Subsection 1, and 111, Subsection B.

23            It was the purpose and object of the conspiracy to

24    simultaneously and forcibly assault Deputy United States

25    Marshals and inflict bodily injury upon them.
```

1          The manner and means by which the Defendants sought to

2     accomplish the purpose and object of the conspiracy included,

3     among other things, distracting Deputy United States Marshals

4     and then simultaneously and forcibly assaulting and inflicting

5     bodily injury upon them.

6          Overt Acts.

7          Number one.  On or about April 8th, 2014, Raees Alam

8     Qazi and Sheheryar Alam Qazi, while being moved within the

9     United States Courthouse complex, simultaneously motioned with

10    their heads to cause the Deputy United States Marshals to look

11    at the ceiling.

12         Two.  On or about April 8th, 2014, Raees Alam Qazi and

13    Sheheryar Alam Qazi, while the Deputy United States Marshals

14    were momentarily distracted, simultaneously punched them in the

15    face and struggled with them.

16         Three.  On or about April 8th, 2014, Raees Alam Qazi

17    and Sheheryar Alam Qazi, while struggling with the Deputy

18    United States Marshals, attempted to use potentially lethal

19    force on them.

20         Four.  On or about April 8th, 2014, Raees Alam Qazi

21    and Sheheryar Alam Qazi, while struggling with the Deputy

22    United States Marshals, simultaneously exclaimed "Allahu

23    Akbar," an Arabic exhortation meaning "God is Great."

24         All in violation of Title 18, United States Code,

25    Section 371.

1           How do you plead to that charge, Mr. Qazi?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  Has anyone forced you or threatened you to

4     enter your plea of guilty?

5           THE DEFENDANT:  No.

6           THE COURT:  Has anyone made any promises or assurances

7     to you, other than what's contained in the Plea Agreement, in

8     order to get you to plead guilty?

9           THE DEFENDANT:  No.

10          THE COURT:  Are you entering a plea of guilty on your

11    own free will?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you entering a plea of guilty because

14    you are, in fact, guilty of that offense?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Sir, do you understand that the Court may

17    impose a statutory maximum term of imprisonment of up to 15

18    years for Count 2?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that that could be

21    followed by a term of supervised release of up to life?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that a statutory maximum

24    term of imprisonment can be imposed for Count 5?

25          THE DEFENDANT:  Yes.

```
 1              THE COURT:  And that can be followed by a term of

 2     supervised release of up to life?

 3              THE DEFENDANT:  Yes.

 4              MS. GILBERT:  Judge -- I'm sorry.  You skipped a

 5     number, the number of years.

 6              THE COURT:  I thought I said 15 years.  If I didn't, I

 7     apologize.  Let me make it clear that with regard to Count 5

 8     that a statutory maximum term of imprisonment of up to 15 years

 9     can be imposed for Count 5.

10              THE DEFENDANT:  Yes.

11              THE COURT:  And that can be followed by a term of

12     supervised release of up to life.

13              THE DEFENDANT:  Yes.

14              THE COURT:  And with regard to Count 6, the Court can

15     impose a statutory maximum term of imprisonment of up to five

16     years.

17              THE DEFENDANT:  Yes.

18              THE COURT:  And that can be followed by a term of

19     supervised release of up to three years.

20              THE DEFENDANT:  Yes.

21              THE COURT:  In addition to the terms of imprisonment

22     and supervised release, the Court may impose a fine of up to

23     $250,000 for Counts 2, 5, and 6.  Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  And that's as to each count.  Do you
```

 1    understand that, sir?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Do you understand that, in addition to

 4    those penalties, a special assessment in the amount of $300

 5    will be imposed upon you?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  And if you are financially unable to pay

 8    that special assessment at the time of sentencing, you have the

 9    burden of presenting evidence to the Court at the time of

10    sentencing as to the reasons why you're unable to pay that.

11            THE DEFENDANT:  Yes.

12            THE COURT:  Pursuant to the Plea Agreement, the Office

13    of the United States Attorney agrees to seek dismissal of

14    Counts 1, 3, 4, 7, and 9 of the Indictment after sentencing.

15    Do you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  You understand that the terms of the Plea

18    Agreement are merely recommendations to the Court.  I can

19    reject the recommendations without permitting you to withdraw

20    your plea of guilty.

21            THE DEFENDANT:  Yes.

22            THE COURT:  And you understand that with regard to any

23    recommendations with regard to sentencing, that the Court can

24    reject that and may impose a sentence that is more severe than

25    you may anticipate.

```
 1            THE DEFENDANT:  Yes.

 2            THE COURT:  Sir, do you understand that the sentence

 3   has not yet been determined by the Court?

 4            THE DEFENDANT:  Yes.

 5            THE COURT:  That any estimate of the probable

 6   sentencing range or sentence that you may receive, whether that

 7   estimate comes from your attorney, the Office of the United

 8   States Attorney, or the Probation office is a prediction, not a

 9   promise, and is not binding on the Court.

10            THE DEFENDANT:  Yes.

11            THE COURT:  You understand the Court can disregard any

12   recommendation in its entirety?

13            THE DEFENDANT:  Yes.

14            THE COURT:  And you understand that you will not be

15   permitted to withdraw your plea based on the Court's decision

16   not to accept a sentencing recommendation that may be made

17   either by yourself, by the Office of the United States

18   Attorney, or jointly.

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you understand that pursuant to the

21   United States Sentencing Guidelines, Section 3A1.4, the offense

22   alleged in Counts 2 and 5 of the Superseding Indictment is a

23   felony that involved a federal crime of terrorism?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And you understand and agree that although
```

1    not binding on the Court, that you and the Office of the United

2    States Attorney will recommend an upward adjustment described

3    in Section 3A1.4 that would apply to the calculation of your

4    advisory guideline sentence for Counts 2 and 5 of the

5    Superseding Indictment.

6              THE DEFENDANT:  Yes.

7              THE COURT:  And that provision states the following:

8              "If the offense is a felony that involved or was

9    intended to promote a federal crime of terrorism, increase by

10    12 levels.  But if the resulting offense level is less than

11    level 32, increase to level 32.  In each such case, the

12    defendant's criminal history category from Chapter Four," which

13    is Criminal History and Criminal Livelihood, "shall be a

14    Category VI."

15              Do you understand that, sir?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Do you understand, sir, that the offenses

18    to which you are pleading guilty are felony offenses?

19              THE DEFENDANT:  Yes.

20              THE COURT:  And if the Court accepts your pleas of

21    guilty, you will be adjudicated guilty of those offenses and

22    that plea of guilty and the resulting adjudication may deprive

23    you or valuable civil rights, such as the right to vote, the

24    right to hold public office, the right to serve on a jury, and

25    the right to possess any kind of firearm.

1      THE DEFENDANT:  Yes.

2      THE COURT:  Have you discussed with your attorney the

3  possible immigration consequences of a guilty plea?

4      THE DEFENDANT:  Yes.

5      THE COURT:  And you understand that if you are not a

6  citizen of the United States, in addition to the other possible

7  penalties you are facing, a plea of guilty may subject you to

8  deportation, exclusion, or voluntary departure, and prevent you

9  from obtaining United States citizenship.

10      THE DEFENDANT:  Yes.

11      THE COURT:  Have you and Mr. Ecarius specifically

12  talked about the advisory sentencing guidelines and how they

13  might apply in your case?

14      THE DEFENDANT:  Yes.

15      THE COURT:  And you understand that I will not be able

16  to be determine the advisory guideline range for your case

17  until after the Presentence Report has been completed and you

18  in the Government have had the opportunity to challenge the

19  reported facts and the application of the guidelines

20  recommended by the Probation officer, and that the sentence

21  ultimately imposed may be different from any estimate your

22  attorney may have given you.

23      THE DEFENDANT:  Yes.

24      THE COURT:  Do you understand, sir, that after your

25  initial advisory guideline range has been determined, I have

1    the authority in some circumstances to depart upward or

2    downward from that range, and I will examine other statutory

3    sentencing factors that may result in the imposition of a

4    sentence that is either greater or lesser than the advisory

5    guideline sentence?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand, sir, that parole has

8    been abolished and if you are sentenced to prison you will not

9    be released on parole?

10             THE DEFENDANT:  Yes.

11             THE COURT:  You understand, sir, that you have the

12   right to persist in your pleas of not guilty.

13             THE DEFENDANT:  Yes.

14             THE COURT:  That you have the right to a trial by

15   jury.

16             THE DEFENDANT:  Yes.

17             THE COURT:  At trial, you would be presumed to be

18   innocent and the Government would have to prove your guilt

19   beyond a reasonable doubt.

20             THE DEFENDANT:  Yes.

21             THE COURT:  That you have the right to the assistance

22   of counsel for your defense, appointed by the Court, if

23   necessary, at trial and every other stage of the proceeding.

24   You have the right to see and hear all the witnesses and have

25   them cross-examined in your defense.  You have the right on

```
1    your own part to decline to testify, unless you voluntarily

2    elected to do so, and the right to compel the attendance of

3    witnesses to testify in your defense.

4              THE DEFENDANT:  Yes.

5              THE COURT:  And you understand that if you decided not

6    to testify or present any evidence, those facts could not be

7    used against you.

8              THE DEFENDANT:  Yes.

9              THE COURT:  Mr. Qazi, you understand that by entering

10   your pleas of guilty there will be no trial and you will have

11   waived or given up your right to a trial, as well as the other

12   rights associated with a trial that I've just described.

13             THE DEFENDANT:  Yes.

14             THE COURT:  You understand any motions you wanted your

15   attorney to file, any witnesses you wanted him to speak to, any

16   further investigation of any kind will not take place because

17   the litigation will end today.  Do you understand that, sir?

18             THE DEFENDANT:  Yes.

19             THE COURT:  If the Government will set forth an

20   independent factual basis for the plea.

21             MS. GILBERT:  Yes, Your Honor.

22             MR. FELS:  If this case were to proceed to trial, the

23   Government would prove the following beyond a reasonable doubt:

24             Defendants, Raees Alam Qazi and Sheheryar Alam Qazi,

25   conspired with one another and others to provide material
```

1   support to terrorists, in violation of Title 18, United States

2   Code, Section 2339A, little A, Count 2, and conspired with one

3   another to forcibly assault federal employees, in violation of

4   Title 18, United States Code, Section 371, Count 6.

5       Further, Raees Alam Qazi attempted to provide material

6   support to a foreign terrorist organization, in violation of

7   Title 18, United States Code, Section 2339B, Count 5.

8       Count 2.  Beginning as early as July 2011 and

9   continuing through November 29th, 2012, in the Southern

10  District of Florida and elsewhere, the Defendants conspired to

11  provide material support and resources, as defined in Title 18,

12  United States Code, Section 2339A, little B, 1, including, but

13  not limited to, property, service, including financial

14  services, lodging, communications equipment, and personnel,

15  knowing and intending that they be used in preparation for, and

16  in carrying out, a violation of Title 18, United States Code,

17  Section 2332A, little A, that is, using a weapon of mass

18  destruction.

19      Beginning as early as July 2011 and continuing through

20  November 29th, 2012, in the Southern District of Florida and

21  elsewhere, Raees Alam Qazi attempted to provide material

22  support and resources, as that term is defined in Title 18,

23  United States Code, Section 2339A, little B, 1, including, but

24  not limited, to property, service, including financial

25  services, lodging, communications equipment, and personnel to a

```
 1    foreign terrorist organization, that is, Al-Qa'ida and

 2    Al-Qa'ida in the Arabian Peninsula, AQAP, knowing that those

 3    organizations have engaged and engage in terrorist activity, as

 4    defined in Title 8, United States Code, Section 1182, little A,

 5    3, B.

 6              The facts in support of these counts are follows:

 7              From mid-summer 2011 until November 2012, agents

 8    conducted a lengthy investigation into two brothers from

 9    Oakland Park, Florida, suspected of a planning a terrorist

10    attack.  The investigation revealed that Raees Alam Qazi, the

11    younger brother, was going to initiate the attack, and he was

12    financially and emotionally supported by his older brother,

13    Sheheryar Alam Qazi.  Although Sheheryar Alam Qazi likely did

14    not know all of the details of the planned operation, he

15    encouraged his brother to succeed in this task.  Both brothers

16    were arrested on November 29th, 2012 after Raees Alam Qazi

17    returned to Fort Lauderdale from an aborted attempt to launch

18    an attack involving a weapon of mass destruction in New York

19    City.

20              During the course of the investigation, evidence was

21    revealed that Raees Alam Qazi conducted significant computer

22    research regarding AQAP/Al-Qa'ida, Anwar al-Awlaki, Inspire

23    Magazine and tools utilized for violent jihad.  Raees Alam Qazi

24    participated in online computer forums discussing violent jihad

25    and he maintained two YouTube channels in which he discussed
```

1    various topics, including Anwar al-Awlaki and Inspire.

2            While Raees Alam Qazi was in Pakistan between July

3    2011 and January 2012, he accessed a radical Islamic Internet

4    forum called "Ansar al-Mujahedeen English Forum," otherwise

5    known as "Ansar," using the screen name "alBaraa."  Raees Alam

6    Qazi would later admit in his post-arrest statement that he

7    used this user name on the Ansar forum.  Raees Alam Qazi made

8    numerous postings in this forum as "alBaraa" related to Anwar

9    al-Awlaki, Inspire, and jihad.  YouTube comments made by Raees

10   Alam Qazi in late 2011 and early 2012 further show his

11   knowledge and familiarity with Anwar al-Awlaki and Inspire.

12           In July 2012, Raees Alam Qazi decided to rejoin the

13   Ansar radical Islamic forum, this time taking on the screen

14   name "AnwarAwlaki."  Raees Alam Qazi admitted in his

15   post-arrest statement that he had also used the screen name

16   "AnwarAwlaki" on either the Ansar forum or another forum.

17   During this time frame, Raees Alam Qazi recommended an Al

18   Qa'ida-sponsored course on the manufacturing of explosives to

19   an individual seeking information on rocketry, explosives, or

20   any other such weapons.

21           AQAP/Al-Qa'ida are designated foreign terrorist

22   organizations and the Defendants knew that AQAP/Al-Qa'ida

23   participated in terrorist activity.  Anwar Al-Awlaki was a

24   radical American-born AQAP spiritual leader killed by a drone

25   strike in September of 2011.

```
 1              Inspire is an online publication by AQAP/Al-Qa'ida
 2    which encourages brothers in the West to remain in the West to
 3    conduct jihad operation, acts of terrorism.  The publication
 4    provides instructions, including, but not limited to, how to
 5    conduct attacks and how to select targets for the attack.
 6    There have been numerous issues of publications, and the first
 7    issue was available as early as the summer of 2010.  Issue 9
 8    was made available in May 2012, which was the last issue
 9    published before the arrest of the Defendants.  Various issues
10    of Inspire had a section entitled "Open Source Jihad," which
11    provided information on how to conduct jihad operations in the
12    West.
13              Raees Alam Qazi's online computer research and
14    postings reveals that he was very well-versed with Inspire, the
15    fact that it was a publication by a terrorist group and that it
16    encouraged brothers in the West to remain in the West to
17    conduct jihad operations, acts of terrorism.  Volumes of
18    Inspire, which Raees Alam Qazi acknowledged reading, contained
19    lectures on the propriety of targeting non-Muslim civilians,
20    specific instructions on building an explosive device out of
21    common items, including Christmas tree lightbulbs, and
22    instructions on use of encryption, the use of Internet proxies,
23    and connecting to the Internet from places other than his
24    house.
25              MS. GILBERT:  During the course of his attack
```

```
1   planning, Raees Qazi followed the direction of Al-Qa'ida and

2   AQAP.  On November 6th, 2011, Raees Alam Qazi sent an encrypted

3   email to AQAP/Al-Qa'ida at an address listed in Inspire

4   Magazine.  Surveillance of Raees Alam Qazi demonstrated that

5   Raees Alam Qazi followed many of the directions contained in

6   Inspire, including the use of Internet proxies, connecting to

7   the Internet from places other than his house.

8           Sheheryar Alam Qazi was well aware that Raees was in

9   contact with Al-Qa'ida and that he supported his brother's

10  efforts to support the terrorists.  In a recorded August 30th,

11  2012 meeting between an FBI confidential human source and

12  Sheheryar, Sheheryar acknowledged that while Raees was in

13  Pakistan he tried to cross the border into Afghanistan --

14          THE COURT:  Ms. Gilbert, I apologize.  If you could

15  just slow down just a little bit for the court reporter.

16          MS. GILBERT:  Sure, Judge.  I've provided her exact

17  copy.

18          -- but couldn't find a way to do it.  Sheheryar

19  confided that, quote, I sent him, close quote, to go over to

20  Afghanistan and that, due to his support of Raees, Raees came

21  back to Sheheryar rather than other family members after the

22  failed attempt to enter Afghanistan.  Sheheryar also

23  acknowledged that Raees had been trying to reach the, quote,

24  guys from Yemen, close quote, which is a reference to Al-Qa'ida

25  or AQAP, on the Internet, but that they told him not to come to
```

1   Afghanistan because there were enough people, instead to do

2   something in the US.  Sheheryar stated that the guys from Yemen

3   were supposed to help Raees, but no help had been rendered to

4   date, and Raees was no longer waiting.  Sheheryar said that

5   Raees had to train himself and would be a, quote, loan wolf,

6   like, quote, Brother Shahzad, close quote, who had tried to

7   conduct an attack on the Comedy Central building in New York.

8   The man who Sheheryar referenced, Faisal Shahzad, had attempted

9   to use a weapon of mass destruction on the Comedy Central

10  building before he was apprehended by law enforcement

11  officials.  Referencing a quote attributed to the Prophet

12  Mohammed, Sheheryar stated in the recording that Raees had to

13  be more patient than the enemy, the United States.

14          Raees confirmed his submission to the will of his

15  Al-Qa'ida handlers in a recorded September 15th, 2012 meeting

16  with another confidential human source.  After expressing

17  approval of a radical jihad inspiring lecture of Anwar-Awlaki,

18  entitled quote, The Dust Never Settles, close quote, Raees

19  confided that he was on a different course for his jihad.

20  Raees hinted that he would not be using an assault rifle or RPG

21  but would be doing different things.  Raees explained that he

22  had been in contact with representatives from Al-Qa'ida and

23  that if he was told by his leaders to stay in the West, meaning

24  the United States, then he would, quote, obey them, close

25  quote.  Raees continued:  "The leaders know what they are

1    talking about, so when they call on Muslims in the West to stay

2    in the West there's a reason for that.  Raees suggested to the

3    source that if the source was serious about jihad the source

4    should consider staying in Florida because the source knew the

5    area well, including the famous places.

6         Recordings made during the course of the investigation

7    demonstrate that both Sheheryar and Raees enjoined listening to

8    lectures by Anwar al-Awlaki and that both Sheheryar and Raees

9    expressed support for Al-Qa'ida leader Osama bin Laden.  Raees

10   also professed his support of jihad, and to Al-Qa'ida

11   specifically, to a source on a number of occasions.  Sheheryar

12   also professed his support of jihad, and to Al-Qa'ida

13   specifically, on a number of occasions, as well as professing

14   his support for his brother and his brother's mission.  For

15   example, Sheheryar explained that he was feeding his brother

16   Raees and housing him, quote, for the sake of Allah, close

17   quote, and did not want to force him to get a job which might

18   diminish his level of devotion and take him away from the path

19   of Allah.

20        On November 10th, 2012, Raees conducted online

21   research on key chemicals used in the manufacturing of a weapon

22   of mass destruction, such as ammonium nitrate, potassium

23   chlorate, and potassium nitrate.  All three chemicals are

24   commonly used as an oxidizer to accelerate the burning of

25   oxygen in a bomb explosion.

1              On November 23rd, 2012, Raees was able to shake the

2      surveillance of the agents.  He had made arrangements to travel

3      by vehicle to New York City with another individual and he

4      shaved his beard, which he had grown for religious reasons, as

5      part of his attack plans.

6              On November 27th, 2012, Raees called Sheheryar to

7      notify his brother that he had not been successful in his task

8      and to express concern that he would have to return after

9      having shaved his beard.  Sheheryar reassured his younger

10     brother that he should, quote, not give any importance to

11     people while doing something for the sake of Allah, close

12     quote, and encouraged him to return to practice over here.

13     "Then you may return to New York.  You know, I will give you

14     complete freedom."  Agents regained surveillance of Raees on

15     November 28th, 2012 when he boarded a bus to return to the

16     state of Florida.  Upon his return, both he and Sheheryar were

17     arrested.

18              In his post-Miranda, post-arrest statement, Raees

19     admitted that he had traveled to New York to conduct an attack.

20     He also admitted in his statement that he had taken hints from

21     AQAP and Al-Qa'ida online publication entitled "Inspire

22     Magazine," including building an explosive device using

23     Christmas tree lightbulbs.  Raees also conceded that he had

24     used information at Inspire to communicate with AQAP/Al-Qa'ida,

25     including using an encryption program using Internet proxies

```
 1    and connecting to the Internet from places other than his house
 2    and that his communications with Al-Qa'ida dealt with his
 3    desires to launch an attack in the United States.
 4            While Sheheryar did not know all of the facts of his
 5    brother's attack plan, he was aware that Raees was planning on
 6    using a weapon of mass destruction and agreed to provide him
 7    with support, including lodging, food, and a computer to be
 8    used to research the Internet so that his brother Raees would
 9    be successful in his plans to use a weapon of mass destruction.
10    While Raees was in New York, Sheheryar actively misled friends
11    and family about Raees' true whereabouts and activities.
12            As to Count 6, on or about April 8th, 2014, in the
13    Southern District of Florida, Raees and Sheheryar, while being
14    moved within the United States Courthouse complex in Miami,
15    simultaneously motioned with their heads to cause the Deputy
16    United States Marshals to look at the ceiling.  While the
17    Deputy United States Marshals were momentarily distracted, the
18    Defendants simultaneously punched them in the face and
19    struggled with them.  Raees and Sheheryar, while struggling
20    with the Deputy United States Marshals, attempted to use
21    potentially lethal force on them.  And while struggling with
22    the marshals, the Defendants simultaneously exclaimed "Allahu
23    Akbar," an Arabic exhortation meaning "God is great."  The
24    injuries to the marshals, Your Honor, included bruising.
25            THE COURT:  All right.  So there was, in fact, bodily
```

```
 1   injury?

 2            MS. GILBERT:  Yes.

 3            THE COURT:  Thank you, Ms. Gilbert.

 4            Mr. Qazi, you are aware that a conspiracy is an

 5   agreement by two or more people to commit an unlawful act?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  And you understand with regard to a

 8   conspiracy you can be found guilty if the following facts are

 9   proved beyond a reasonable doubt, that is, two or more persons

10   in some way agreed to try to accomplish a shared and unlawful

11   plan; that you knew the unlawful purpose of the plan and

12   willfully joined in it; and during the conspiracy, one of the

13   conspirators knowingly engaged in at least one overt act, as

14   described in the Indictment and the overt act was committed at

15   or about the time alleged and with the purpose of carrying out

16   or accomplishing some object of the conspiracy.

17            THE DEFENDANT:  Yes.

18            THE COURT:  Overt act is a transaction or event, even

19   one that may be entirely innocent when viewed alone, that a

20   conspirator commits to accomplish some object of the

21   conspiracy.

22            THE DEFENDANT:  Yes.

23            THE COURT:  And that a person may be a conspirator

24   without knowing all the details of the unlawful plan or the

25   names and identities of all of the other alleged conspirators.
```

```
 1                THE DEFENDANT:  Yes.

 2                THE COURT:  And if you played only a minor part in the

 3     plan, but you had a general understanding of the unlawful

 4     purpose, and you willfully joined in the plan on at least one

 5     occasion, that is sufficient to be found guilty.

 6                THE DEFENDANT:  Yes.

 7                THE COURT:  You have heard Mr. Fels' and Ms. Gilbert's

 8     statement of the facts they intended to present at the time of

 9     trial.  Are you in agreement with those facts?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Are those facts true?

12                THE DEFENDANT:  Yes.

13                THE COURT:  Mr. Ecarius, did you receive all of the

14     discovery in this case?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Counsel, did you receive all discovery in

17     this case?

18                MR. ECARIUS:  Yes, Your Honor.

19                THE COURT:  Are you assured that the Factual Proffer

20     is consistent with the true facts in this case?

21                MR. ECARIUS:  Yes, Your Honor.

22                THE COURT:  Are you in agreement that if those facts

23     were presented at the time of trial that the Government would

24     meet its burden of proving all of the elements of Counts 2, 5,

25     and 6 of the Superseding Indictment?
```

```
 1                THE DEFENDANT:  Yes, Your Honor.

 2                THE COURT:  And you have discussed that with Mr. Qazi?

 3                MR. ECARIUS:  Yes.

 4                THE COURT:  And Mr. Qazi, you are in agreement, sir?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  Before the Court is Factual Basis in

 7      support of a plea that consists of eight pages.  Did you fully

 8      review this with your attorney?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  Did you read it yourself?

11                THE DEFENDANT:  Yes.

12                THE COURT:  Did you understand it?

13                THE DEFENDANT:  Yes.

14                THE COURT:  Were all of your questions answered?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Did you then sign the agreement?

17                THE DEFENDANT:  Yes.

18                THE COURT:  And is this your signature, sir?

19                THE DEFENDANT:  Yes.

20                THE COURT:  As well as the signature of your attorney?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Mr. Ecarius, is this your signature, sir?

23                MR. ECARIUS:  Yes, Your Honor.

24                THE COURT:  As well as the signature of Ms. Gilbert?

25                MS. GILBERT:  Yes, Your Honor.
```

```
 1              THE COURT:  And Mr. Fels?

 2              MR. FELS:  Yes, Your Honor.

 3              THE COURT:  Are the facts set forth in this Factual

 4     Basis true, sir?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  This Factual Basis was signed on March

 7     10th.  Today is March 12.  To your understanding, have any of

 8     the facts changed?

 9              THE DEFENDANT:  Excuse me?

10              THE COURT:  Have any of the facts changed?

11              THE DEFENDANT:  No.

12              THE COURT:  Are you in agreement in the facts that are

13     set forth in this eight-page Factual Basis?

14              THE DEFENDANT:  Yes.

15              THE COURT:  And do you admit that the facts as set

16     forth by Ms. Gilbert and Mr. Fels are true?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Are you in agreement with those?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Finally, with regard to the Plea Agreement

21     that consists of five pages, is this your signature, sir?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And did you sign it after your attorney

24     answered all of your questions?

25              THE DEFENDANT:  Yes.
```

```
 1            THE COURT:  Do you fully understand the agreement?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Does this agreement set forth the entire

 4     understanding that you have with the Office of the United

 5     States Attorney?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  Are there any other agreements, promises,

 8     representations, or understandings?

 9            THE DEFENDANT:  No.

10            THE COURT:  Mr. Qazi, is it still your intention and

11     do you want to enter pleas of guilty to Counts 2, 5, and 6 of

12     the Superceding Indictment?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Do you have any questions, sir?

15            THE DEFENDANT:  No.

16            THE COURT:  It's the finding of the Court that in the

17     case of the United States of America v. Raees Alam Qazi that

18     the Defendant is fully capable and competent, certainly capable

19     of entering an informed plea of guilty.  That he is aware of

20     the nature of each charge and the consequence of his pleas, and

21     that his pleas of guilty are knowing and voluntary pleas,

22     supported by an independent basis in fact, containing each of

23     the essential elements of the offense.

24            Mr. Qazi, the pleas are therefore accepted and you are

25     adjudicated guilty of each of the offenses.
```

```
1              The Court will set sentencing in your case, sir, for
2     Friday, June 5th, 2015, at 10:00 a.m. in this courtroom.
3              You and your attorney will be meeting with a Probation
4     officer.  The Probation officer will ask many questions
5     regarding your history.  I would suggest that your responses be
6     thorough, since the Court will be relying upon that document.
7              Following the completion of the Presentence
8     Investigation Report, you and your attorney, as well the
9     Government, will have an opportunity to review the report and
10    file any objections that you may have to the report.
11             At the time of sentencing, on Friday, June 5th, at
12    10:00 a.m., if there are individuals that would like to speak
13    on your behalf, please advise those individuals to be present
14    on that date and time.
15             Do you have any questions, sir?
16             THE DEFENDANT:  No.
17             THE COURT:  Anything further in Mr. Qazi's case?
18             MR. ECARIUS:  No, Your Honor.
19             THE COURT:  On behalf of the Government?
20             MS. GILBERT:  No, Your Honor.
21             THE COURT:  We'll see you at that time.
22         (Proceedings concluded at 11:39 a.m.)
23
24
25
```

1    UNITED STATES OF AMERICA       )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5          I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 12th

9    day of March, 2015, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12          I further certify that this transcript contains pages

13   1 - 33.

14          IN WITNESS WHEREOF, I have hereunto set my hand at

15   Fort Lauderdale, Florida this 1st day of July, 2016.

16

17                        /s/Yvette Hernandez
                          Yvette Hernandez, CSR, RPR, CLR
18                        Certified Shorthand Reporter
                          299 East Broward Boulevard
19                        Room 207-B
                          Fort Lauderdale, Florida 33301
20                        (954) 769-5686
                          yvette_hernandez@flsd.uscourts.gov
21

22

23

24

25