## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-cr-60298-BLOOM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RAEES ALAM QAZI,

      Defendant.

_____/

### ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Raees Alam Qazi's ("Defendant")
Motion for Compassionate Release Under 18 U.S.C. 3582(c)(1)(A)(i), ECF No. [343] ("Motion").
The Government filed a Response, ECF No. [350], to which Defendant filed a Reply, ECF No.
[356]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, the
record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed
below, the Motion is denied.

### I.  BACKGROUND

On March 12, 2015, Defendant pled guilty to (1) Conspiracy to provide material support
and resources to terrorists, in violation of 18 U.S.C. § 2339A(a); (2) Attempt to provide material
support and resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1);
(3) Conspiracy to forcibly assault a federal employee, in violation of 18 U.S.C. § 371. ECF No.
[283]. On June 11, 2015, this Court sentenced Defendant to a total term of imprisonment of 420
months, followed by a ten-year term of supervised release. ECF No. [301]. Defendant is currently
housed at the Lee United States Penitentiary in Jonesville, Virginia, and is scheduled to be released
from custody on September 9, 2042.

In the Motion, Defendant requests a reduction in sentence and argues he is eligible under United States Sentence Guideline § 1B1.13, the policy statement which details the circumstances that warrant a reduction of an imprisonment term under 18 U.S.C. § 3582(c)(1)(A). Defendant argues he is entitled to a reduced sentence because "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," specifically:

> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
> ….
> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

ECF No. [343] at 5-6.

The Government opposes the Motion, arguing that Defendant failed to exhaust his administrative remedies; the Sentencing Commission exceeded its authority delegated by Congress when it implemented Sentencing Guideline § 1B1.13 (b)(6); there was no change in the law that caused a difference in sentencing; and the § 3553 factors strongly weigh against Defendant's release. ECF No. [350].

## II.    LEGAL STANDARD

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction; …
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Pursuant to United States Sentencing Guideline § 1B1.13(a), the court may "reduce a term of imprisonment…" if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

**(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
**(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
**(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).

Guideline § 1B1.13(b) sets forth the six circumstances that constitute "Extraordinary and compelling reasons" warranting a sentence reduction, including:

(3) Family Circumstances of the Defendant.-- (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
….
(6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made

retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(3),(6).

In order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must find as follows:

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

The Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

## III.    DISCUSSION

### A.  Administrative Exhaustion

Defendant argues that he administratively exhausted his remedies. As proof of administrative exhaustion, Defendant attaches an electronic request to the warden asking the warden to file a § 3582 motion on his behalf. ECF No. [343] at 23. After receipt, the warden responded to Defendant by stating that the warden would not "be pursuing a request for a

Compassionate Release/Reduction of Sentence on [Defendant's] behalf. *id.* at 24. The warden directed Defendant to "address your concerns to your respective Court." *Id.* The Government responds that this is insufficient proof of administrative exhaustion, as Defendant does not attach any documentation that he appealed the warden's denial of his motion. ECF No. [350] at 6-8 (quoting *United States v. Arroyo*, 2022 WL 464252, at *2 (S.D. Fla. Feb. 15, 2022); BOP Program Statement 5050.50). Defendant replies that he properly exhausted his administrative remedies as thirty days elapsed since the warden received his request. ECF No. [356] at 2.

To file a motion for a reduced sentence, Defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). On November 2, 2023, Defendant submitted a request that the warden file a compassionate release motion on his behalf. ECF No. [343] at 23. The warden responded by denying his request on November 3, 2023, noting that "[t]he Bureau of Prisons has no authority to change or modify a sentence in regards to the statu[t]es utilized by the Court to determine your sentence. However, if you wish to contest the legality of your sentence you should address your concerns to your respective Court." ECF No. [343] at 24. Defendant filed this Motion for Sentence Reduction on January 2, 2024, more than thirty days after the receipt of his request by the warden. Accordingly, Defendant has administratively exhausted his remedies, as more than 30 days lapsed between the receipt of Defendant's request by the warden and when Defendant filed this Motion.

The Government argues that Defendant must have appealed the warden's denial to administratively exhaust his remedies. This Court has previously rejected this interpretation, holding that "the plain language of Section 3582(c)(1)(A) makes clear that '[t]he 30-day waiting

time provision is an exception to a plenary exhaustion requirement.'" *United States v. Qazi*, No. 12-CR-60298, 2023 WL 7495095, at *3 (S.D. Fla. Nov. 13, 2023) (quoting *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020)). Accordingly, this Court proceeds with the remainder of the sentence reduction analysis.

### B.  Extraordinary and Compelling Reasons Under § 3582(c)(1)(A)

Defendant seeks a sentence reduction pursuant to § 3582(c)(1)(A) which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
> > . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

#### i. Unusually Long Sentence

The Court first turns to Defendant's request for a reduced sentence under Sentencing Guideline § 1B1.13(b)(6), which lists the following as an extraordinary and compelling reason warranting a sentence reduction:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Defendant argues that his sentence of 35 years is unusually long, he has served at least ten years of his imprisonment since his incarceration on November 29, 2012, and there has been a change in law concerning youth in sentencing that warrants a sentence reduction. ECF No. [343] at 7-11. Specifically, courts have required consideration or reconsideration by way of sentence reductions under 18 U.S.C. § 3582 of long sentences for youthful offenders. ECF No. [343] at 8. Defendant cites numerous cases, discussed below, which he argues evidence such change of law or a discrepancy in sentencing. *Id.* at 12-15. The Government responds that the Sentencing Commission did not have the statutory authority to implement Sentencing Guideline § 1B1.13(b)(6) and that those cases do not support a sentence reduction for Defendant, as they are either inapposite or demonstrate that Defendant's sentence was correct. ECF No. [350] at 8-22. Defendant replies that the Sentencing Commission has the authority to promulgate Sentencing Guideline § 1B1.13(b)(6). ECF No. [356] at 3.

### a. Sentencing Commission's Authority to Implement 1B1.13(b)(6)

The Court first addresses the Government's threshold argument that the Sentencing Commission exceeded its Congressionally delegated authority in implementing subsection § 1B1.13(b)(6) of the Sentencing Guidelines. ECF No. [350] at 10-12. The Government urges that Sentencing Guideline § 1B1.13(b)(6) ("subsection (b)(6)") is an impermissible reading of the statute because an intervening development in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. ECF No. [350] at 10-12. Moreover, subsection (b)(6) is incompatible with the Sentencing Reform Act's purpose and Congress's intent when it implemented Section 3582(c)(1)(A), as it effectively reproduces the indeterminate system the Act

sought to eliminate. ECF No. [350] at 15-16. The Government argues that the Commission's interpretation that Section 3582(c)(1)(A) empowers district courts to apply non-retroactive changes in law to particular defendants and to ignore Congress's retroactivity determinations on a case-by-case basis is in serious tension with basic separation-of-powers principles. ECF No. [350] at 16. Defendant replies that the Sentencing Commission acted well within its authority in promulgating subsection (b)(6) and the Court may consider intervening developments in sentencing law. ECF No. [356] at 4. Further, Defendant argues that nothing about the words "extraordinary and compelling" excludes circumstances that are related to legal changes or other non-health-and age-related matters. *Id.* at 4-5.

 As the Eleventh Circuit recently stated:

> Policy statements and commentary in the Guidelines are not binding on federal courts if they "violate[ ] ... a federal statute." *Stinson v. United States*, 508 U.S. 36, 38, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). If a policy statement "is at odds" with a federal statute, it must "bow to the specific directives of Congress," and the conflicting portion "must give way" to the statutory directive. *United States v. LaBonte*, 520 U.S. 751, 757, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). When Congress amended Section 3582(c)(1)(A) to allow defendants to file those motions, it rendered some of 1B1.13 inoperative. For instance, the first sentence of Application Note 4 says "A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." That provision and the amended Section 3582(c)(1)(A) are mutually exclusive: They cannot possibly coexist. When that happens, we simply apply the statute, which trumps the policy statement.

*United States v. Bryant*, 996 F.3d 1243, 1263 (11th Cir. 2021). Courts do not have the freedom to define "extraordinary and compelling reasons." *Id.* at 1259, 1264.

 Moreover, the Commission is specifically authorized by statute to implement sentencing guidelines. *See* 28 U.S.C. § 994(a). Further, the Commission:

> in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including

the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).

The Sentencing Commission is accordingly explicitly authorized to describe "extraordinary and compelling reasons for sentence reduction" with one exception: it cannot make "[r]ehabilitation of the defendant alone" an extraordinary and compelling reason. *Id.* The Sentencing Commission determined that such extraordinary and compelling reasons include:

> UNUSUALLY LONG SENTENCE—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). Subsection (b)(6) appears to fall squarely within the Sentencing Guidelines' explicit Congressional authority to describe "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t).

The Government argues that subsection (b)(6) would restore an indeterminate sentencing regime by leaving sentence reductions to the discretion of the district judge, in violation of the intent behind the Sentencing Reform Act. ECF No. [350] at 15 (quoting *Tapia v. United States*, 564 U.S. 319, 325 (2011)). However, the text of subsection (b)(6) instead appears wholly consistent with the intent of the Sentencing Reform Act. Subsection (b)(6) makes an unusually long sentence relevant to determining whether there is an extraordinary and compelling reason "*only* where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added). Subsection

(b)(6) attempts to achieve exactly what Congress intended with the Sentencing Reform Act, namely "the elimination of unwarranted sentencing disparity." S. Rep. No. 98-225, at 38 (1983).

Further, the Government argues that, in implementing subsection (b)(6), the Sentencing Commission declined to afford the same respect to Congress's retroactivity determinations as it did to its own. The Government asserts that the Sentencing Commission deferred to its own Guidelines by excluding "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6). The Government acknowledges that other changes in law, including a statutory change that Congress explicitly declined to make retroactive, could be applied retroactively. The Government argues that a counterintuitive result cannot be squared with the Commission's statutory authority. ECF No. [350] at 10-11 (quoting *United States v. LaBonte*, 520 U.S. 751, 753, 757 (the Commission "must bow to the specific directives of Congress")).

The Court finds the Government's argument unconvincing. First, courts in the Eleventh Circuit have already rejected this argument. *See, e.g., United States v. Padgett,* No. 5:06CR13-RH, 2024 WL 676767, at *4 (N.D. Fla. Jan. 30, 2024) ("When Congress chooses not to make a change retroactive, it means the change cannot be invoked by every affected defendant. It does not repeal § 3582(c)(1)(A)(i) or prevent an affected defendant whose circumstances are extraordinary and compelling from invoking that provision"). Second, a non-retroactive sentencing change implemented by Congress is not at issue before this Court. Third, Sentencing Guideline § 1B1.13(c) does permit courts to take non-retroactive amendments to the Sentencing Guidelines into consideration for a sentence reduction in certain circumstances, namely "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction." U.S.S.G. § 1B1.13(c).

The Court is not persuaded by the argument that Congress already provided for the retroactive application of some changes in law in § 3582(c)(2), which it would not have done had § 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not[.]" ECF No. [350] at 14. That argument misunderstands the statutory scheme at issue. The statute considers circumstances allowing for the "Modification of an Imposed Term of Imprisonment" in 18 U.S.C. § 3582(c). The statute states that a court may only modify a term of imprisonment once imposed if there are "extraordinary and compelling reasons" *or* "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c)…" 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). The Commission is then empowered by statute to describe extraordinary and compelling reasons warranting a sentence reduction. *See* 28 U.S.C. § 994(t). Separately, a sentence may be reduced in "the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)[.]" 18 U.S.C. § 3582(c)(2). Such a sentence reduction is not due to "extraordinary and compelling reasons" but stands alone. *Compare* 18 U.S.C. § 3582(c)(1)(A). Nothing in this statutory scheme precludes the Sentencing Commission from including other changes in law as "extraordinary and compelling reasons" warranting a sentence reduction. Because the Sentencing Commission was empowered to describe what constitutes "extraordinary and compelling reasons" warranting a sentence modification by 28 U.S.C. § 994(t), it properly filled in the blanks of the statutory scheme in Sentencing Guideline 1B1.13 and described "extraordinary and compelling reasons" as including an "unusually long sentence."

The Court finds that subsection (b)(6) was a valid exercise by the Sentencing Commission of its statutory authority to "describe what should be considered extraordinary and compelling

reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

28 U.S.C. § 994(t). That result is not changed by the docketed order cited by the Government to

evidence that subsection (b)(6) was enacted in excess of the Sentencing Commission's authority.

*See United States v. Williams*, Case No. 03-cr-20678-ALTONAGA, ECF No. [906].

The Court next considers Defendant's argument that he is entitled to a reduced sentence

under subsection (b)(6).

### b. Unusually Long Sentence Under Subsection (b)(6)

Defendant argues he is entitled to a sentence reduction because he has served at least ten

years and he has an unusually long sentence, such that a change in the law may be considered by

the Court. ECF No. [343]. He cites numerous cases where district courts have reduced long

sentences for youthful defendants pursuant to United States Supreme Court cases on youth

sentencing under the Eighth Amendment. ECF No. [343] at 8. *See*, *e.g.*, *Roper v. Simmons*, 543

U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012);

*Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 593 U.S. 98 (2021). The

Government responds that those cases are distinguishable as the cases either (1) involve homicides

and attempted homicides committed by 18-24 years, where age was but one factor of the analysis;

or (2) violations of 18 U.S.C. § 924(c) by youthful offenders who would have received a lower

sentence pursuant to the First Step Act after the amendments to § 924(c). ECF No. [350] at 18-21.

The Government argues that, even considering Qazi's own research, it is apparent that the Court

sentenced Qazi to the correct sentence. *Id.* at 22. The Government points out that the authority

Defendant relies on predates his sentence and arose under the Eighth Amendment so there was no

change in the law that caused a difference in sentencing. ECF No. [350] at 24-25. Defendant replies

that both sets of cases favor a sentence reduction, as the first involved defendants who actually

committed homicide and the second involves violent robberies, and those defendants inflicted greater harm than he did as he intentionally disengaged from a conspiracy in which no one was murdered. ECF No. [356] at 6. Defendant claims numerous courts have relied on *Roper*, *Graham*, *Miller*, *Montgomery,* and *Jones* when determining whether a defendant's youth is a factor to grant the requested relief. *Id.* at 8.

Under subsection (b)(6), "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason" if: (1) "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment" but (2) "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). Moreover, the determination of whether there is an extraordinary and compelling reason warranting a sentence reduction must occur "after full consideration of the defendant's individualized circumstances." *Id.* The Sentencing Guidelines further provide that:

> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

### 1. Unusually Long Sentence and Served Ten Years

Defendant argues that his aggregate sentence of 35 years, the maximum he could receive, is an unusually long sentence. ECF No. [343] at 7. Defendant served at least "10 years of the term

of imprisonment" since he started his incarceration on November 29, 2012, even if he was sentenced on June 11, 2015. U.S.S.G. § 1B1.13(b)(6). The Government does not dispute that Defendant served ten years of his term of imprisonment nor does it address the argument that Defendant's sentence is unusually long. Nevertheless, the Court proceeds to the next step of the analysis.

### 2. Change in the Law

The Court addresses Defendant's argument regarding a change in the law. In the last twenty years, the Supreme Court has, under the Eighth Amendment, issued numerous decisions pertaining to the sentencing of minors. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 593 U.S. 98 (2021). As summed up by the Supreme Court itself,

> In *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Court concluded that the Eighth Amendment prohibits capital punishment for murderers who were under 18 at the time of their crimes. And in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court held that the Eighth Amendment prohibits life without parole for offenders who were under 18 and committed *nonhomicide* offenses. Importantly, however, *Graham* did not prohibit life without parole for offenders who were under 18 and committed *homicide*.

*Jones v. Mississippi*, 593 U.S. 98, 105–06 (2021) (emphasis in original). Further, "*Miller* held that the Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits *mandatory* life-without-parole sentences for murderers under 18, but the Court allowed *discretionary* life-without-parole sentences for those offenders." *Id.* at 103. "*Montgomery* later held that *Miller* applies retroactively on collateral review." *Id.* at 118.

Defendant does not argue that this case law applies to him, as he was not sentenced to life without parole. Instead, Defendant argues that these decisions initiated a change in the courts' approach to sentencing of youth — including youth above eighteen — which led to the

resentencing of defendants convicted at a young age. Those district court opinions are each based on the precept that "youth matters in sentencing." *Jones*, 593 U.S. at 109.

Similar to the defendant in *United States v. Morris*, No. 3:99-CR-264-17 (VAB), 2022 WL 3703201, at *9 (D. Conn. Aug. 26, 2022), Defendant "is asking the Court to consider his age at the time the crime was committed when deciding whether to reduce his sentence" as an extraordinary and compelling circumstance rather than raising a constitutional challenge to his sentence. In support, Defendant cites several out-of-circuit opinions, discussed further below. In *Golding*, for instance, a court in the Southern District of New York noted "recent developments in neuroscience, psychology, and sociology, which demonstrate why standard penological goals apply with much less force to younger defendants in light of their immaturity, susceptibility to peer and other influences, salvageability, and dependence on family and other features of their environment that lie beyond their control." *United States v. Golding*, No. 05-CR-538 (JSR), 2022 WL 2985014, at *2 (S.D.N.Y. July 27, 2022) (citing *Jones*, 593 U.S. at 98; *Miller*, 567 U.S. at 472). The court explained that "these distinctive features of youth and our increased understanding of their role in younger offenders' crimes may create extraordinary and compelling circumstances warranting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)" *Id.* There, the Court resentenced the defendant based on his age at the time of the offense, twenty years old, noting his immaturity at 20 which made him "highly susceptible to the influence of his older peer, Shawn Peterkin, who, as described above, helped place Golding in jobs and shelter soon after he arrived in this country." *Id.* at *3.

The court also considered Golding's record of rehabilitation, and the harsh conditions of COVID-19 at his detention facility "which included extended periods without visitation and with severely restricted freedom of movement within prison, may render the conditions of confinement

'far harsher and more punitive than the Court had anticipated at sentencing.'" *Golding*, 2022 WL 2985014, at *4. There, the defendant had been convicted of a drive-by shooting that caused the victim's death and his sentence was reduced by 10% —by 42 months — to a sentence of 378 months. Similar to the defendant in *Goldberg*, Defendant contends that his youth, which made him highly influenceable to the Internet, his rehabilitation, and COVID-19 all support his sentence reduction.

The Court assumes without deciding that other courts' decisions to resentence youth pursuant to United States Supreme Court precedent on youthful sentencing under the Eighth Amendment constitutes a "change in the law" under U.S.S.G. § 1B1.13(b)(6). That change in law may be considered "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement[.] U.S.S.G. § 1B1.13(c). However, the Court finds that the Government is correct that the cases cited by Defendant fail to support the argument that there is a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" even with that change in law. U.S.S.G. § 1B1.13(b)(6).

### 3. Disparity Between Sentence Being Served and Sentence Likely to Be Imposed Now

As the Government argues, there are two sets of cases listed by Defendant as evidence of sentencing disparities. One set involves homicides and attempted homicides committed by 18-24 year-old individuals where age was a factor in the decision to reduce each defendant's sentence (the "homicide cases"). ECF No. [350] at 18-21. The second set involves violations of 18 U.S.C. § 924(c) by youthful offenders who would have received a lower sentence pursuant to the First Step Act after the amendments to § 924(c) (the "§ 924(c) cases"). ECF No. [350] at 18-21. The Government asserts that the homicide cases demonstrate that "the Court sentenced Qazi to the

correct sentence" as "each of the homicide and attempted murder cases resulted in at least 30 years in prison." ECF No. [250] at 22. Additionally, Defendant lists material support for terrorism cases with lower sentences as evidence of a sentencing discrepancy. ECF No. [343] at 12-15. The Government responds that the material support to terrorism cases are distinguishable because they do not involve a violent attack by the defendants. ECF No. [350] at 21.

### a.       924(c) Cases

The § 924(c) cases cited are distinguishable from Defendant's case. There, the reduction in Defendant's sentences derived from the statutory change to § 924(c) pursuant to the First Step Act. Section 924(c) is inapplicable to Defendant. Section 924(c) regulates sentencing for "any person who, during and in relation to any crime of violence or drug trafficking crime … uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. 18 U.S.C. § 924(c). At the time the defendants in the cases cited were first sentenced "18 U.S.C. § 924(c) included a 'stacking' provision that required a district court to impose consecutive sentences of twenty-five years' imprisonment for second or subsequent convictions of the statute, even if those convictions occurred at the same time as a defendant's first conviction under the statute." *United States v. Maumau*, 993 F.3d 821, 824 (10th Cir. 2021); *see also United States v. Hicks*, No. 98-CR-06-TCK, 2021 WL 1554326, at *5 (N.D. Okla. Apr. 20, 2021). However, in 2018, "Section 403(a) of the First Step Act amended § 924(c) so that the twenty-five-year mandatory minimum sentence for a second or subsequent conviction of § 924(c) applies only if the defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction." *Maumau*, 993 F.3d at 824.

Though some of these cases occurred before the Sentencing Guidelines' passage of U.S.S.G. § 1B1.13(b)(6) in 2023, the change in stacked sentences caused by the amendment of § 924(c) played a key role in those defendants' resentencing. *See Cotton v. United States*, No. 2:08-

CR-87, 2022 WL 3050007, at *3 (E.D. Va. Aug. 2, 2022) (holding "[t]he critical disparity in Petitioner's case derives from the former mandatory "stacking" requirement under 18 U.S.C. § 924(c)(1)(C)"); *Maumau*, 993 F.3d at 837 (finding a combination of factors warranted relief, including: 'Maumau's young age at the time of' sentencing; the 'incredible' length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau, 'if sentenced today, ... would not be subject to such a long term of imprisonment'"); *Hicks*, 2021 WL 1554326, at *5) (finding "[i]f Hicks were sentenced based on what is now considered to be a fair and reasonable punishment, he would not have been subject to a mandatory enhancement" due to "[t]he amendments to § 924(c)(1)(C) under the First Step Act.") The defendants' youth was one factor in the resentencing in those cases. However, the intervening change of law leading to a disparity between the sentence being served and the sentence to be imposed at the time the motion was filed was due to the elimination in sentence-stacking under 18 U.S.C. § 924(c). That change in law is wholly inapplicable to Defendant.

The case of *United States v. DeJesus*, No. 6 CR. 12 (ER), 2022 WL 1154251, at *4 (S.D.N.Y. Apr. 19, 2022) is also inapplicable to Defendant. There, the reduced sentenced was in part due to another change of law, namely "the enhanced mandatory minimum on his conviction for narcotics conspiracy based on his youthful offender adjudication" after the passage of the First Step Act. *Id.* at *5. The court reduced DeJesus's sentence after holding that "DeJesus would have been subject to a mandatory minimum sentence of ten years [were he sentenced at the time his motion was filed], not the twenty years that mandated by the Guidelines at that time, and he likely would have received a dramatically lower sentence." *Id.* That change in law is also inapplicable to Defendant.

b.       **Homicide Cases**

The homicide cases, including *Golding*, are more relevant to this Court's inquiry. In those cases, courts resentenced defendants based on their young age, the discrepancy in their sentence compared to other defendants convicted of the same offense, the threat of COVID-19, or personal or family circumstances — all factors Defendant asserts as warranting a reduced sentence in this case. While the Government is correct that those cases relate to homicides, and not to material support to terrorism cases, the cases provide support that courts now use defendants' youth at the age of the offense of conviction to resentence defendants, recognizing that "youth matters in sentencing." *Jones v. Mississippi*, 593 U.S. 98, 109 (2021).

However, a review of each case leads to the conclusion that those cases fail to support Defendant's argument that he is entitled to a sentence reduction. First, most of the cases involve youthful offenders being sentenced to life imprisonment. Second, the new sentences imposed by courts due to the defendants' youth falls within a similar range as the sentence imposed on Defendant in 2015. Accordingly, a change in law leading to reduced sentences for youthful offenders would *not* "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed…" for Defendant. U.S.S.G. § 1B1.13(b)(6).

For instance, in *United States v. Ramsay*, 538 F. Supp. 3d 407, 409 (S.D.N.Y. 2021), the Court reduced Ramsay's sentence from life imprisonment to a term of 360 months' imprisonment. At eighteen years old, Ramsey shot into a crowd intending to kill the leader of a rival gang, and killing the target and fatally wounding two bystanders, one of whom was pregnant and lost her baby. *Id.* at 417.

In *United States v. Cruz*, No. 3:94-CR-112 (JCH), 2021 WL 1326851, at *7 (D. Conn. Apr. 9, 2021), the court reduced Cruz's sentence from life imprisonment — previously commuted to 35

years then reinstated — to time served after he served 31 years in jail with good credit. The court relied on the defendant's youth at the time of the offense, and the unusually long sentence because "the national average length of a federal sentence for murder over the past decade is approximately 22 years[,]" his transformational rehabilitation, the risk posed to Cruz by COVID-19 and the fact that Cruz's mother needed his help in light of her health issues.

In *United States v. Glynn*, No. 06-CR-580 (JSR), 2022 WL 562652, at *1 (S.D.N.Y. Feb. 24, 2022), defendant Glynn was 22 years old and the leader of a unit of the Bloods street gang in the Bronx "that distributed hundreds of grams of crack cocaine and defended its territory through acts of violence, including the murder of Frederick Fowler and attempted murder of Charles Myers on May 22, 2000." *Id*. The court found that "the combined facts of Glynn's recently diagnosed chronic kidney disease, Glynn's rehabilitation during the twenty years he was incarcerated, and his relatively young age constituted, cumulatively, an extraordinary and compelling reason warranting a partial reduction in Glynn's sentence." *Id.* at *7. The Court granted "a modest reduction in the length of his sentence" from life imprisonment to 420 months on all counts. *Id.*

In *United States v. Morris*, 2022 WL 3703201 (D. Conn. Aug. 26, 2022), Morris was sentenced to four concurrent life sentences for extensive and violent drug trafficking that culminated in a homicide while 24 years old. The court found "that Mr. Morris's age when the crime was committed and his rehabilitation present extraordinary and compelling reasons warranting a sentence reduction" and reduced his sentence (previously modified from four life sentences to 450 months) to 360 months. *Id.* at *8.

Those new sentences — 360 months in *Ramsay*, 372 months in *Cruz* (31 years), 378 months in *Golding*, or 420 months in *Glynn* — fall within the range of Defendant's sentence of 420 months for his conviction based on conduct that occurred at an age ranging from 18 to 20.

Those sentences do not evidence "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed…" U.S.S.G. § 1B1.13(b)(6). Instead, the sentences demonstrate that, if Defendant was sentenced today for a serious youthful offense, Defendant would likely receive a sentence within the same range as the sentence imposed in 2015.

### c.      Material Support for Terrorism Cases

As evidence of a sentencing discrepancy, Defendant also cites the following cases involving material support to terrorism: *United States v. Muhtorov*, 329 F. Supp. 3d 1289, 1309 (D. Colo. 2018); *United States v. Mohammed*, No. 1:13-cr-20364 (S.D. Fla.); *United States v. Awan*, No. 1:06-cr-00154 (E.D.N.Y.); *United States v. Ahmed*, 1:15-cr-00049 (D. Minn.); *United States v. Dakhlalla*, 1:15-cr-00098 (N.D. Miss.); *United States v. Daniels*, No. 2-16-cr-00222 (D. Ohio). ECF No. [343] at 12-16. Defendant points out that he did not follow through with the conspiracy to place a bomb in New York because he had a change of heart, and that his youth and lack of criminal history was never taken into consideration at sentencing. ECF No. [343] at 15. The Government responds that the material support to terrorism cases are distinguishable because they do not involve a violent attack by the defendants. ECF No. [350] at 21.

While the cases cited by Defendant reflect a difference among the length of sentences of defendants convicted of material support for terrorism — and related acts — and Defendant's case,[1] those cases do not warrant a sentence reduction under § 1B1.13 because they are not related

---

[1] Defendant cites the following cases as evidence of a grossly disparate sentence, described by the *Muhtorov* court as follows:

- In *Muhtorov*, the defendant "attempted to travel to join and to provide financial support to a terrorist organization" and to provide them with $300. *United States v. Muhtorov*, 329 F. Supp. 3d 1289, 1304 (D. Colo. 2018). "Muhtorov emailed the IJU website administrator an oath of allegiance stating that he would perform any task for the organization even if it meant risking death." *Id.* at 1294. Scanning the cases for similar offenses in federal court, the court sentenced Mukhtorov to "96 months' imprisonment on Count 1, 96 months' imprisonment on Count 2, and 132 months' imprisonment on Count 3, the sentences for each count to run concurrently." *Id.* at 1311

to the change in law identified by Defendant. The Sentencing Guidelines state that "a change in the law … may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where *such change* would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed…" U.S.S.G. § 1B1.13(b)(6) (emphasis added). Here, Defendant identified the change of law as greater leniency toward youth in sentencing but fails to demonstrate that it is *that change in law* that produces a gross disparity between the sentence served and the one likely to be imposed now as to the material support to terrorism cases. Instead, the case law as to a sentencing disparity for material support to terrorism cases is most relevant when considering Defendant's 3553(a) factors.

- "In *United States v. Daniels*, No. 2-16-cr-00222 (D. Ohio), Daniels was initially indicted of two counts of providing and attempting to provide himself as personnel to ISIS in violation of § 2339B. He was arrested at the airport before boarding his outbound flight and later admitted to the FBI that his ultimate destination was Libya, where he intended to join ISIS. He further confessed to previously sending $250 via Western Union to an ISIS member and recruiter." *Id.* at 1311. The judge sentenced him to 80 months' imprisonment with lifetime supervised release. *Id.*
- "In *United States v. Dakhlalla*, 1:15-cr-00098 (N.D. Miss.), Dakhlalla pleaded guilty to one count of conspiracy to provide himself as personnel to ISIS in violation of § 2339B. He and his co-conspirator planned to travel to join ISIS." *Id.* at 1310. The judge sentenced him to 96 months' imprisonment plus 15 years.
- In *United States v. Mohammed*, No. 1:13-cr-20364 (S.D. Fla.), Gufran Ahmed Kauser Mohammed was sentenced to 180 months plus ten years supervised release when he "provide[d] 15 separate payments of support totaling over $30,000 over the course of two years" for al-Qaida, al-Nusra Front, and al-Shabaab. *Id.* at 1308.
- In *United States v. Ahmed*, No. 1:15-cr-00049 (D. Minn.), Ahmed and Abdurahman each pleaded guilty to one count of conspiracy to provide material support in violation of 18 U.S.C. § 2339B. (Ahmed also pleaded guilty to an additional financial aid fraud charge) for "attempt[ing] to travel to Syria to join ISIS[.]" *Id.* at 1309. They were sentenced to "120 months' imprisonment plus 20 years' supervised release." *Id.* at 1309.
- "In *United States v. Awan*, No. 1:06-cr-00154 (E.D.N.Y.), a jury convicted Awan of two counts of violating 18 U.S.C. § 2339A, conspiracy to provide material support to terrorists and providing material support to terrorists, and one count of money laundering with the intention of promoting an offense against a foreign nation, involving murder and destruction of property in violation of 18 U.S.C. § 1956(a)(2)(A). Over several years, he transferred more than $60,000 to the Khalistan Commando Force ("KCF"), a militant Sikh separatist group responsible for hundreds of bombings and thousands of deaths in India. He also attempted to recruit at least one individual to travel to Pakistan to join the KCF and receive military training." *Id.* at 1308-09. The judge sentenced him to 168 months' imprisonment and three years' supervised release. *Id.* at 1308-09.

### ii. Family Circumstances of the Defendant

Defendant asserts that he is entitled to a sentence reduction because his mother has recently developed cancer and needs a caregiver, which he expands on in an affidavit and letter to the Court. *See* ECF No. [343] at 29, 34-35. The Government does not address Defendant's assertion.

The Sentencing Guidelines provide that a defendant may be entitled to a sentence reduction for extraordinary and compelling reasons for "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). In support, Defendant attaches an affidavit stating that his "mother has recently devel[o]ped cancer and is in need of a caregiver" and he would "return to Pakistan to then care for [his] mother" if given the opportunity. ECF No. [343] at 29. He explains that his "aging mom is being forced into early retirement due to her declining mental and physical health." ECF No. [343] at 34-35. He does not include additional legal argument or specific details as to his mother's illness to sustain this basis for a sentence reduction. Accordingly, Defendant has not shown that he is entitled to a reduced sentence under U.S.S.G. § 1B1.13(b)(3)(C).

The Court addresses the § 3553(a) factors and find that they also weigh against Defendant's compassionate release.

### C.      Sentencing Factors Under § 3142(g) and § 3553(a)

As to the § 3142(g) and § 3553(a) factors, Defendant asserts that he is not a danger to the community and is willing to renounce his U.S. Citizenship and be deported back to Pakistan, ECF No. [343] at 17. He also claims that "he is a vastly different, mature man in comparison to the young, scared and confused one that committed the crimes he was accus[e]d of." ECF No. [343] at 11. Defendant notes that the assaults on U.S. Marshals were the result of bad-decision making based in part on inhumane treatment, as he was held in solitary confinement for the majority of the

time prior to his plea deal, for 20 months — he was held in segregation/isolation for over ten years in a Supermax facility despite not being a disciplinary problem. ECF No. [343] at 18-19. In support, Defendant attaches his affidavit, *id.* at 26-30, a letter, *id.* at 32-35, a newspaper article on the Olympic Park bomber being held in a Supermax facility stating "it is not hard to come unhinged under such conditions[,]" *id.* at 36, and letters from eight of Defendant's friends, who are also incarcerated with him, *id.* at 37-53. The Government responds that Defendant remains a true believer of extremist ideology and poses a grave danger to society because he was charged of a "federal crime of terrorism" under 18 U.S.C. § 3142(g) and is a danger to the safety of the community, as further evidenced by his request to the Court for *Inspire* (Al Qaeda) magazines while incarcerated, demonstrating Defendant does not disavow his extremist ideology. ECF No. [350] at 27. Defendant replies that he merely sought the magazines to seek discovery pertaining to his case as he attempted to relitigate his case while incarcerated. ECF No. [356] at 8.

### i.    The § 3142(g) Factors

Under Sentencing Guideline § 1B1.13(a)(2), the court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(a)(2). Section 3142(g) sets forth the relevant factors to consider whether a defendant is a danger to the safety of other persons or of the community, namely:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

The 18 U.S.C. § 3142(g) weigh heavily against a reduced sentence as to the "nature and circumstances of the offense."  18 U.S.C. § 3142(g)(1). Defendant was convicted of "a Federal crime of terrorism[,]" which weighs in favor of finding that Defendant poses a danger to the safety of the community. 18 U.S.C. § 3142(g). The nature and circumstances of the offenses charged, as described in the factual proffer, cited below, raised substantial concerns of a violent attack and weigh against a reduced sentence:

From mid-summer 2011 until November 2012, agents conducted a lengthy investigation into two brothers from Oakland Park, Florida, suspected of planning a terrorist attack. The investigation revealed that Raees Alam Qazi, the younger brother, was going to initiate the attack and that he was financially and emotionally supported by his older brother, Sheheryar Alam Qazi. Although Sheheryar Alam Qazi likely did not know all of the details of the planned operation, he encouraged his brother to succeed in his task. Both brothers were arrested on November 29, 2012, after Raees Alam Qazi returned to Fort Lauderdale from an aborted attempt to launch an attack involving a weapon of mass destruction in New York City.

During the course of the investigation, evidence was revealed that Raees Alam Qazi conducted significant computer research regarding AQAP/Al Qa'ida, Anwar al-Awlaki, Inspire Magazine, and tools utilized for violet [sic] jihad."
…
While Raees Alnam Qazi was in Pakistan between July 2011 and January 2012, he accessed a radical Islamic internet forum called Ansar al-Mujahedeen English Forum ("Ansar") using the screen name "alBaraa" (Raees Alam Qazi would later admit in his post-arrest statement that he used this user name on the Ansar forum.) Raees Alam Qazi made numerous postings in this forum as "alBaraa" related to

Anwar al-Awlaki, *Inspire*, and jihad. YouTube comments made by Raees Almn Qazi in late 2011 and early 2012 further show his knowledge and familiarity with Anwar Al-Awlaki and Inspire. In July 2012, Raees Alam Qazi decided to rejoin the Ansar radical Islamic forum, this time taking on the screen name "AnwarAwlaki." Raees Alam Qazi admitted in his post-arrest statement that he had also used the screen name "AnwarAwlaki" on either the Ansar forum or another forum. During this timeframe, Raees Alam Qazi recommended an Al Qa'ida-sponsored course on the manufacturing of explosives to an individual seeking information on "rocketry, explosives or any other such weapons."

….

On November 10, 2012, Raees Alam Qazi conducted online research on key chemicals used in the manufacturing of a weapon of mass destruction, such as ammonium nitrate, potassium chlorate and potassium nitrate. All three chemicals are commonly used as an oxidizer to accelerate the burning of oxygen in a bomb explosion.

On November 23, 2012, Raees Alam Qazi was able to "shake" the surveillance of the [FBI] agents. He had made arrangements to travel by vehicle to New York City with another individual, and shaved his beard (which he had grown for religious reasons) as part of his attack plans. On November 27, 2012, Raees Alam Qazi called Sheheryar Alam Qazi to notify his brother that he had not been successful in his task and to express concern that he would have to return after having shaved his beard. Sheheryar Alam Qazi reassured his younger brother that he should "not give any importance to people. . . [while] doing something for the sake of Allah" and encouraged him to return to practice over here [Florida] then you may return [to New York] you know. . .. I will give you complete freedom ." Agents regained surveillance of Raees Alam Qazi on November 28, 2012, when he boarded a bus to return to South Florida. Upon his return, both he and Sheheryar Alam Qazi were arrested.

ln his post-arrest, post-Miranda statement, Raees Alam Qazi admitted that he travelled to New York to conduct an attack. He also admitted in his statement that he had taken "hints" from an AQAP/AI Qa'ida online publication entitled *lnspire* Magazine, including building an explosive device using Christmas tree light bulbs. Raees Alam Qazi also conceded that he had used information in *Inspire* to communicate with AQAP/A1-Qa'ida -- including using an encryption program, using internet proxies and connecting to the internet from places other than his house-- and that his communications with Al Qa'ida dealt with his desires to launch an attack in the United States.

…

On or about April 8, 2014, Raees Alam Qazi and Sheheryar Alam Qazi, while being moved within the United States Courthouse complex in Miami, Florida, simultaneously motioned with their heads to cause the Deputy United States Marshals to look at the ceiling; while the Deputy United States Marshals were distracted, the defendants simultaneously punched them in the face and struggled with them. Raees Alam Qazi and Sheheryar Alam Qazi, while struggling with the Deputy United States Marshals, attempted to use potentially lethal force on them, and while struggling with the Deputy United States Marshals, the defendants

simultaneously exclaimed "Allahu Akbar," an Arabic exhortation meaning "God is Great."

ECF No. [284].

Defendant urges that because he would renounce his US citizenship and return to Pakistan, that is dispositive of not being a danger to the community. Defendant quotes *United States v. Morrison*, No. 19-CR-284-PWG, 2020 WL 3447757, at *5 (D. Md. June 24, 2020) ("I find that Mr. Morrison is not a danger to the community as he is a nonviolent offender who will be released to ICE or CBP custody after release and deported to Jamaica.") to this effect. However, *Morrison* does not support Defendant's argument. As the court stated in *Morrisson* — and unlike Defendant who pled guilty to a count of conspiracy to forcibly assault a federal employee under 18 U.S.C. § 371 — Morrisson was a nonviolent offender. The § 3142(g) factors as to the history and circumstances of the offense weigh against a reduced sentence but considers the individualized factors of § 3142(g) jointly with the § 3553(a) factors, as "[t]he factors listed in 3142(g) are largely duplicative of those in 3553(a)." *Martin*, 2020 WL 3960433, at *6.

### ii. The § 3553(a) Factors

The sentencing factors under § 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The § 3553(a) factors do not warrant a reduced sentence for Defendant. The Court previously discussed the "the nature and circumstances of the offense" when discussing the § 3142(g) factors.

As to the § 3553(a)(4) and (a)(6) factors, Defendant does evidence that other defendants convicted of material support to terrorism had lower sentences, as discussed above. However, the cases cited by Defendant are "material support travel cases" where defendants sought to travel to join a violent organization. *Muhtorov*, 329 F. Supp. 3d at 1307. None of those defendants were convicted for taking steps toward placing a bomb in a large American city so these defendants were not found guilty of "similar conduct." 18 U.S.C. § 3553(a)(6). Accordingly, those cases do not evidence the "kinds of sentence and the sentencing range established for… the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines" under 18 U.S.C. § 3553(a)(4). They also do not evidence "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as the conduct underlying conviction for these defendants differs from this case. 18 U.S.C. § 3553(a)(6).

Defendant includes evidence of rehabilitation to support that "the history and characteristics of the defendant" weigh in favor of a sentence reduction under § 3553(a).  He attaches eight letters from friends he met during his incarceration. One friend, Chad Stoner, notes Defendant is "positive…. conscientious and thoughtful." ECF No. [343] at 38. Defendant's cellmate, Eulalio Lopez, also states that Defendant "is a giant ball of positive energy." *Id.* at 42. Another friend, Branden Labarge, states that Defendant "demonstrated remorse and regret for the

actions he took that led to his incarceration" and is now a "changed man[.]" *Id.* at 46. Defendant also attaches his letter stating "genuine heartfelt remorse and repentance" for his acts, and explaining he fell victim to propaganda on the internet. ECF No. [343] at 32. Defendant states that his previous assault of the US Marshals was "wrong" and induced by "blind uncontrollable anger" after prolonged solitary confinement. ECF No. [343] at 33. Defendant points out that he has not had a disciplinary record while incarcerated but is instead a model prisoner, which the Government does not contradict.

Though the Court is encouraged to see evidence of Defendant's rehabilitation, that evidence is outweighed by the seriousness of his offense of conviction. The Court declines to reduce Defendant's sentence and concludes that Defendant has not satisfied his burden of demonstrating that a sentence reduction is warranted.

### D.  Appointment of Counsel

The Eleventh Circuit has held that there is no right to the appointment of counsel in Section 3582(c)(1)(A) proceedings, and that such decisions are "left to the discretion of the district court." *United States v. Rolon*, No. 22-10970, 2022 WL 16959204, at *1 (11th Cir. Nov. 16, 2022) (quoting *United States v. Webb*, 565 F.3d 789, 794–95 (11th Cir. 2009) (holding there is no constitutional or statutory right to counsel in Section 3582(c)(2) proceedings)). And, as the *Rolon* Court also noted, "*pro se* status alone and lack of legal knowledge does not establish that appointment of counsel is necessary. Rather, appointment of counsel in this context is 'a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues so novel or complex as to require the assistance of a trained practitioner.'" *Id.* (cleaned up) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). The Court declines to appoint counsel to represent

Case No. 12-cr-60298-BLOOM

Defendant in this case and finds that Defendant's *pro se* pleadings and other documents accurately and thoroughly addressed the legal and factual issues before the Court.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [343]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 17, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Raees Alam Qazi
01223-104
Lee-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 305
Jonesville, VA 24263
PRO SE